UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BAYOU STEEL, ET AL.                    *        CIVIL ACTION

versus                                 *        NO. 07-1034

EVANSTON INSURANCE CO., ET AL.         *        SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court are cross-motions for summary judgment.  For
the reasons that follow, the plaintiffs' motion is DENIED and the
defendant's motion is GRANTED.

**<u>Background</u>**

The facts underlying this coverage dispute are familiar,
indeed, stipulated and otherwise outlined in the U.S. Fifth
Circuit's most recent iteration, <u>Bayou Steel Corp. v. Nat'l Union</u>
<u>Fire Ins. Co. of Pittsburgh, PA</u>, 642 F.3d 506 (5th Cir. 2011);
nonetheless, a brief summary to contextualize the present cross-
motions is appropriate.

Ryan Campbell was injured on October 2, 2002 while he was
unloading steel bundles owned by Bayou Steel Corporation from a
barge owned by Memco Barge Lines, Inc.  Bayou Steel, a steel
manufacturer, contracted with Memco in January 2002 whereby Memco
agreed to transport steel cargo from Bayou Steel's facility in
LaPlace, Louisiana, to certain destinations including Bayou Steel's
Calumet River facility in Chicago, Illinois.  Pursuant to this
freight contract, Memco was not responsible for loading or

1

unloading the cargo; Bayou Steel was.

In August 2002 Bayou Steel loaded a Memco barge in LaPlace, Louisiana with steel angle iron bundles, separated by dunnage. After the Memco barge was loaded, Memco towed the barge to Bayou's facility on the Calumet River. Once the barge reached Chicago, Kindra Marine, a stevedoring company, unloaded the barge, pursuant to a contract it entered into with Bayou Steel.

On October 2, 2002, Campbell was employed by Kindra Marine as a longshoreman to assist in unloading the angle steel cargo from the Memco barge and onto a truck.  Campbell was injured when he stepped on a piece of dunnage separating bundles of steel in the hold of the barge in an attempt to place the cable necessary to crane lift the bundles of steel out of the barge.  The dunnage apparently cracked and broke, causing the steel to fall on Campbell, who sustained serious injuries to his legs.

On November 26, 2002 Campbell sued Bayou Steel in Illinois state court.  National Union Fire Insurance Company of Louisiana (NUFIC-LA), which issued a $1,000,000 primary wharfinger policy to Bayou Steel, accepted coverage and defense for Campbell's claim against Bayou Steel.  New York Marine and General Insurance Company (NYMAGIC), which issued a $14,000,000 excess wharfinger policy to Bayou Steel, initially denied coverage for the claims, but ultimately participated in, and contributed to, the settlement of the underlying claim.

2

Evanston Insurance Company, Bayou Steel's commercial general liability insurer, and National Union Fire Insurance Company of Pittsburgh, Pa. (NUFIC-PA), Bayou Steel's commercial umbrella carrier, denied coverage of the claim, relying in part on the policies' Longshoremen and Harbor Workers Compensation Act exclusion; neither Evanston nor NUFIC-PA participated in the settlement of the underlying litigation.  The underlying litigation was ultimately settled for $6,000,000 with NUFIC-LA contributing $585,158.74, NYMAGIC contributing $3,414,841.76, and Kindra Marine contributing approximately $2,000,000, and all claims against NUFIC-LA and NYMAGIC were released; Bayou Steel and NYMAGIC reserved their right to seek contribution or recovery against Evanston and NUFIC-PA.

On February 21, 2008 Bayou Steel and NYMAGIC sued Evanston and NUFIC-PA, seeking declaration of coverage under the respective policies, and seeking reimbursement of the payments made to settle Campbell's underlying claim.  The parties filed a first set of cross-motions for summary judgment regarding the applicability of the LHWCA exclusion.  Although this Court granted the motions filed by Evanston and NUFIC-PA, finding that the LHWCA exclusion applied, that finding was overruled by the U.S. Fifth Circuit Court of Appeals.  See Bayou Steel Corp. V. Evanston Ins. Co., 354 Fed.Appx. 9 (5th Cir. Nov. 10, 2009)(unpublished)(per curiam)("Bayou Steel I").  Because the Fifth Circuit determined that Campbell's suit

3

against Bayou Steel could not be characterized as a suit "pursuant
to" the LHWCA, the Fifth Circuit ruled that Evanston's exclusion
did not apply and "Evanston and NUFICPA must provide coverage to
Bayou consistent with their respective policies." See id.

Following remand, the parties filed a second set of cross-
motions, this time disputing the applicability of an exclusion
contained in the NYMAGIC policy, which excluded coverage for
injuries to employees of the insured's (Bayou Steel's)
subcontractors. The NYMAGIC excess policy exclusion focusing that
dispute (as incorporated from the NUFIC-LA primary policy, to which
NYMAGIC's policy followed form) adds in limited coverage for
personal injury, stating:

> In consideration of an additional premium ... this policy
> is extended to cover the liability imposed by law for
> loss of life, or personal injury arising out of the
> custodianship of the barges described ... hereunder but
> always excluding liability for:
> ...
>
> (2) Employees of ... [Bayou Steel's] sub-contractors.

This Court found that Kindra Marine was a subcontractor of Bayou
Steel (pursuant to the Bayou Steel/Memco freight contract), and
that because Campbell was Kindra Marine's employee at the time of
the accident, the exclusion applied to preclude coverage under the
NYMAGIC policy. However, on appeal, the Fifth Circuit reversed
this Court's summary judgment that Kindra Marine was Bayou Steel's
subcontractor. In reaching its conclusion that Kindra Marine was

Bayou Steel's contractor (and not sub-contractor), the Fifth Circuit observed that:

> This appeal turns on whether Campbell's employer, Kindra, was a *sub*-contractor of Bayou for purposes of this NYMAGIC policy exclusion.   There are two possible alternatives: (1) Kindra was a sub-contractor of Bayou, so NYMAGIC is off the hook for coverage of Campbell's injuries, and NUFIC-PA is on the hook; or (2) Kindra was not a sub-contractor of Bayou, so NYMAGIC is on the hook, and NUFIC-PA is off.

<u>Bayou Steel Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 642 F.3d 506, 509 (5th Cir. 2011)(emphasis in original)(<u>Bayou Steel II</u>).[1]  The Fifth Circuit ultimately determined that NYMAGIC was on the proverbial hook, holding that "for the purposes of the sub-contractor exclusion in the NYMAGIC policy, Kindra was Bayou's contractor--not its *sub*-contractor--so that Campbell's injuries are not excluded from coverage under NYMAGIC's policy."  <u>Id.</u> at 507-08 (emphasis in original).  In concluding that Kindra Marine was Bayou Steel's contractor, not its sub-contractor, the Fifth Circuit posed the following:

> If, for a hypothetical example, Kindra had contracted with a crane contractor to provide and operate a crane

---

[1]At the outset of <u>Bayou Steel II</u>, the Fifth Circuit articulated the "ultimate issue" on appeal:

> whether Campbell's employer, Kindra, was Bayou's contractor or its sub-contractor for purposes of the provision in NYMAGIC's policy that excludes coverage of Bayou's liability for bodily injury incurred by "[e]mployees of ... [Bayou's] sub-contractors" but does not exclude coverage of such injuries incurred by employees of Bayou's contractors.

> during the unloading operation, the crane operator would
> have been Bayou's sub-contractor, but Kindra would have
> remained Bayou's contractor.

Id. at 512 n.29.  In further developing its observation that "Bayou

never had a sub-contractor at any stage of these transactions", the

Fifth Circuit poses yet another hypothetical example:

> Suppose that Bayou had elected to contract with XYZ
> stevedoring to load the cargo in Louisiana and to unload
> it in Illinois.  XYZ would have been Bayou's contractor
> for the purposes of NYMAGIC's policy exclusion, and any
> XYZ employee injured during the course of the stevedoring
> work would have been covered.  But, in turn, if XYZ had
> contracted with Kindra to do the part of XYZ's
> stevedoring work that consisted of unloading the cargo in
> Illinois, Kindra would have been Bayou's sub-contractor,
> i.e., the party hired to do part of the work of Bayou's
> contractor, XYZ, and Kindra's employee would have been
> excluded from coverage under NYMAGIC's policy.

Id. at 513.

The plaintiffs, Bayou Steel and NYMAGIC, and defendant, NUFIC-

PA, have now filed a third round of cross-motions for summary

relief.  NYMAGIC and Bayou Steel, asserting that the NYMAGIC policy

does not afford coverage, now claim the applicability of two

exclusions in the NYMAGIC policy: (1) again, they invoke the

exclusion for injuries to employees of Bayou Steel's

subcontractors; and (2) they invoke as a second exclusion

Endorsement #4, which excludes from coverage anything that would be

covered under the Standard Comprehensive General Liability Policy.

NUFIC-PA, by cross-motion, asserts that neither of these exclusions

apply such that there is coverage under the NYMAGIC policy: the

6

exclusion for injuries to employees of Bayou Steel's subcontractors exclusion is inapplicable, the defendant insists, because the Fifth Circuit has already determined as much; the exclusion regarding applicability of the Standard CGL Policy is inapplicable, NUFIC-PA contends, because the plaintiffs have failed to carry their burden to show that it is applicable.[2]

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely

---

[2]NUFIC-PA asserts, among other things, that the Evanston CGL policy (which undisputably provides coverage) does not follow the form of the Standard CGL Policy.  Also, since this Court raised the issue of waiver during oral argument, NUFIC-PA now additionally contends that the plaintiffs have waived their invocation of Endorsement #4.

7

colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

II.

More familiar standards: according to Louisiana law,[3] an insurance policy is a contract that must be construed using the general rules of contract interpretation set forth in the Civil Code.  See Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 580 (La. 2003).  The Court's role in interpreting contracts is to determine the common intent of the parties.  La. Civ. Code art.

---

[3]There is no dispute, and this Court and the Fifth Circuit have already determined, that Louisiana law applies.

2045.  In determining common intent, pursuant to Civil Code article 2047, words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.  See Henry v. South Louisiana Sugars Co-op., Inc., 957 So.2d 1275, 1277 (La. 2007) (citing Cadwallader, 848 So.2d at 580).  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent" (La. Civ. Code art. 2046), and the agreement must be enforced as written.  Hebert v. Webre, 982 So.2d 770, 773-74 (La. 2008).  The Court's approach to a contract's meaning is driven by simple common sense principles.

Courts should not interpret insurance policies in an unreasonable or a strained manner so as to enlarge or to restrict policy provisions beyond what is reasonably contemplated by the terms or so as to achieve an absurd conclusion.  South Louisiana Sugars Cooperative, 957 So.2d at 1277 (citation omitted).  Unless it conflicts with state law or public policy, an insurance policy may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes.  Id. at 1277-78 (citations omitted).

A policy provision that is susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.  La. Civ. Code art. 2049.

9

Further, the policy should be construed as a whole and one portion should not be construed separately at the expense of disregarding another.  See La. Civ. Code art. 2050; see also Hebert, 982 So.2d at 774 (citations omitted).

If an ambiguity remains after the Court applies the general rules of construction, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage.  Henry, 957 So.2d at 1278 (citing Cadwallader, 848 So.2d at 580).  Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. Id. (citing Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co., 630 So.2d 759, 764 (La. 1994) and Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La. 1991)).  For the rule of strict construction to apply, the ambiguous insurance policy provision must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.  Id. (citing Cadwallader, 848 So.2d at 580).

III.

The Court turns to the relevant policy language and the parties' arguments to sort out the issue of coverage raised by this third set of cross-motions.[4]  Summary relief turns on this Court's

---

[4]Interpretation of an insurance policy usually involves a legal question that can be resolved by summary judgment.  See Huggins v. Gerry Lane Enterprises, Inc., 957 So.2d 127, 129 (La. 2007) (citation omitted).

resolution of two independent disputes:  First, the parties (again) dispute the scope of the NYMAGIC policy exclusion for injuries to employees of Bayou Steel's subcontractors[5] and, as this is the second time this dispute has been raised, the parties also dispute whether the law of the case doctrine applies to foreclose this Court's resolution of the remaining argument concerning this exclusion.  Second, the parties dispute the applicability of the exclusion for claims covered under the terms of the Standard Comprehensive General Liability Policy (Occurrence Basis)(CGL ISO) that was in effect at the time the NYMAGIC policy went into effect. In response to the plaintiffs' invocation of these coverage exclusions, NUFIC-PA counters that neither of these exclusions applies and that the NYMAGIC policy affords coverage (and, therefore, the NUFIC-PA umbrella policy limits are not implicated): the exclusion for injuries to employees of Bayou Steel's subcontractors exclusion is inapplicable, the defendant argues, because the Fifth Circuit has already determined that issue; the exclusion regarding applicability of the Standard CGL Policy has

---

[5]As noted, Bayou Steel's primary policy with NUFICLA provided wharfingers liability coverage.  Bayou Steel's excess wharfingers policy with NYMAGIC was written on a "following form" basis.  The NUFICLA primary policy provided:

> 5.   Notwithstanding anything to the contrary
> ...in this policy, it is hereby expressly
> ...agreed that this insurance does not
> cover any liability:
> A.  For death or personal injury....

been waived or in the alternative is inapplicable, NUFIC-PA contends, because the plaintiffs have not carried their burden to demonstrate that the Evanston policy follows the form of the Standard CGL Policy.

The Court considers each dispute argument in turn.

*A.*
*Exclusion for Injuries*
*to Employees of Bayou Steel's Subcontractors*

1.  The Law of the Case Doctrine

The law of the case doctrine prohibits a district court, on remand, from reexamining an issue of fact or law that has been decided on appeal.  It is a discretionary, not a mandatory rule of jurisdiction.  *See* <u>United States v. Matthews</u>, 312 F.3d 652, 657 (5th Cir. 2002) (quoting <u>Tollett v. City of Kemah</u>, 285 F.3d 357, 363 (5th Cir. 2002)).[6]    The "mandate" rule, and adjectival

_____

[6]Stated another way, the doctrine counsels that "when a court decides upon a rule of law, the decision should continue to govern the same issues at subsequent states of the same case." <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 816 (1988) (quoting <u>Arizona v. California</u>, 460 U.S. 605, 618 (1983)). This doctrine is "a restriction self-imposed by the courts on themselves in the interest of judicial efficiency." <u>Conway v. Chemical Leaman Tank Lines, Inc.</u>, 644 F.2d 1059, 1061 (5th Cir. 1981)(citations omitted).  "Without this doctrine," the Fifth Circuit has presciently observed, "cases would end only when obstinate litigants tire of re-asserting the same arguments over and over again." <u>United States v. Agofsky</u>, 516 F.3d 280, 283 (5th Cir.)(citation omitted)("Additionally, it discourages litigants from filing subsequent appeals in hopes of obtaining a more sympathetic panel."), <u>cert.</u> <u>denied</u>, 129 S.Ct. 64 (2008). Referencing, once again presciently here, as a discretionary antidote to "opportunistic" litigants. <u>See</u> <u>Matthews</u>, 312 F.3d at 657.

doctrine, serves as a companion to the law of the case doctrine: "a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." Id. (quoting United States v. Becerra, 155 F.3d 740, 753 (5th Cir. 1998)).[7]

Regarding the scope of the law of the case doctrine, the Fifth Circuit has observed:

> As a general rule if the issues were decided, either expressly or by necessary implication, those determinations of law will be binding on remand and on a subsequent appeal.  Even if the prior appellate decision did not explicitly discuss the issues, nevertheless the law of the case operates to preclude their reconsideration on remand if the appellate decree necessarily or implicitly resolved them adversely to the party now seeking to reurge them.... On the other hand, unlike common law res judicata, the law of the case established by a prior appeal does not extend to preclude consideration of issues not presented or decided on the prior appeal.  The law of the case doctrine does not include all questions which were present in a case and which might have been decided but were not.  [T]he doctrine of the law of the case applies only to issues decided, not to all those presented for decision but left unanswered.

Conway v. Chemical Leaman Tank Lines, Inc., 644 F.2d 1059, 1062 (5th Cir. 1981) (internal quotations, citations omitted).

---

[7]Application of both the law of the case doctrine and the mandate rule have limited exceptions, including evidence on remand that is "substantially different" from the evidence on appeal, an intervening change of law, and the earlier decision is clearly erroneous and would work a manifest injustice.  Id.  None of these exceptions are applicable especially, as here, where the parties have stipulated to the relevant facts.  Conway also creates some confusion as to whether the unresolved issue must have been formally submitted to the appellate court.

13

2.  The Law of the Case of <u>Bayou Steel II</u>

Neither the law nor the underlying facts have changed since <u>Bayou Steel II</u>; however, the parties dispute the scope of the Fifth Circuit's ruling and whether the issue decided in <u>Bayou Steel II</u> forecloses further examination of the applicability of the exclusion for injury to employees of Bayou Steel's subcontractors.

NUFIC-PA contends that "[b]ecause the matter of Campbell's employment was fully briefed to the appellate court and was a necessary predicate to the court's holding that the exclusion for injury to employees of Bayou Steel's subcontractors did not apply, the matter of Campbell's employment was tacitly or implicitly decided as part of the Fifth Circuit's decision and is now the law of the case."  The plaintiffs counter that the law of the case doctrine is inapplicable because the plaintiffs have not had their day in court as to whether Campbell's claim is precluded from coverage by the NYMAGIC policy's subcontractor employee exclusion by virtue of his employment with IBC.  While the plaintiffs concede that this issue was briefed for the panel in <u>Bayou Steel II</u>, they insist that the Fifth Circuit failed to decide what they now urge this Court to address: whether IBC is Bayou Steel's subcontractor and that the claims of IBC's general employee, Campbell, are excluded by the NYMAGIC policy.

In <u>Bayou Steel II</u>, the Fifth Circuit held:

For the purposes of the sub-contractor exclusion in the NYMAGIC policy, Kindra was Bayou's contractor--not its

14

> sub-contractor--so that Campbell's injuries are not
> excluded from coverage under NYMAGIC's policy.

Bayou Steel II, 642 F.3d at 513.   The Fifth Circuit sums up its

analysis in its Conclusion:

> As Bayou was the principal party (paying party) and
> not the prime contractor (performance party) under both
> its barge transportation agreement with Memco and its
> offloading agreement with Kindra, there is no way for
> Kindra to have been a sub-contractor of Bayou within the
> intendment of the NYMAGIC policy's exclusion of coverage
> for injuries sustained by employees of Bayou's sub-
> contractors.   Kindra contracted directly with Bayou-not
> with some contractor of Bayou-to offload Bayou's cargo,
> so Kindra was Bayou's contractor, not its sub-contractor.
> Consequently, NYMAGIC's coverage exclusion does not apply
> to Campbell's injuries because he was the employee of a
> contractor of Bayou, not of a sub-contractor of Bayou.

Id.  This presents a rule of law that should, barring extraordinary

circumstances or error, bind this Court.   The Court is also

reminded that the stipulation of undisputed facts presented to this

Court agreed that Campbell was a Kindra Marine employee, even if

borrowed from IBC.

   The plaintiffs contend that the Fifth Circuit rejected only

their first argument and not their alternative argument regarding

coverage.[8]  The Court disagrees.   This Court must and will follow

_____

   [8]The plaintiffs point out that they asserted alternative
arguments that applied the law to the stipulated facts in Bayou
Steel II:

>   1.   Campbell was an "employee" of Kindra
> Marine ("Kindra").   Kindra contracted with
> Bayou Steel to perform Bayou Steel's work
> under its shipping contract with MEMCO.... As
> Kindra was doing Bayou Steel's work under the
> contract, it was Bayou Steel's subcontractor,

the letter and spirit of the Fifth Circuit's decision.  The Fifth Circuit reversed this Court's determination that NYMAGIC's coverage exclusion applied to preclude coverage under the NYMAGIC policy, and instead ruled that NYMAGIC's coverage exclusion is inapplicable to Campbell's injuries because he was the employee of a contractor (as stipulated and not disputed) of Bayou Steel, not of a sub-contractor of Bayou Steel.  While the Fifth Circuit did not expressly reject the plaintiffs' second argument -- that because Campbell was also an employee of IBC, IBC must then be considered a subcontractor of Bayou Steel -- the Court finds that the argument was implicitly rejected.  The plaintiffs invoke the hypothetical examples, dicta, posited by the appellate panel and insist that "[t]his is the precise situation now before the Court."  But the issue of Campbell's dual employment was briefed (and the same

---

and, therefore, since Campbell was an employee of Bayou Steel's subcontractor, coverage for his injury was excluded.
2.      Campbell was an actual ("payroll") employee of International Business Concepts, Inc. ("IBC").  Bayou Steel contracted with Kindra to offload its steel from MEMCO's barge.  Kindra in turn contracted with IBC for IBC's employees, including Campbell, to perform work which Kindra had contracted (with Bayou Steel) to perform.  In this instance, Kindra was Bayou Steel's contractor, and Campbell was an employee of IBC, Bayou Steel's subcontractor, so coverage is excluded under the NUFICLA and NYMAGIC policies.
As the plaintiffs correctly point out, the Court agreed with the plaintiffs' first argument (in its June 9, 2010 Order and Reasons granting the plaintiffs' motion for summary judgment and denying NUFIC-PA's cross motion) and, therefore, did not reach the second.

stipulated facts were of record) in <u>Bayou Steel II</u>, and the appellate court nonetheless reversed this Court's original ruling that the coverage exclusion did apply.  <u>See</u> <u>Bayou Steel II</u>.

3.  Reexamination of the Undisputed Facts

Even if reexamination were not barred by the law of the case doctrine, NUFIC-PA contends that Bayou Steel and NYMAGIC did not dispute (and, indeed, stipulated to) the fact that Campbell was an employee of Kindra Marine (Bayou Steel's contractor) and as an employee of a Bayou Steel contractor, his claims are covered by the NYMAGIC policy so that the exclusion is inapplicable.  The Court agrees.

NUFIC-PA draws valuable attention to the Court that the parties have earlier stipulated that Campbell was an employee of Kindra Marine; so the fact that Campbell may have been a direct employee of IBC and a borrowed employee of Kindra Marine does not change the fact that he was an employee of Kindra Marine.[9]  NUFIC-

---

[9]Relevant stipulated facts include:
- "Kindra Marine" was, at the time of the CASUALTY, a stevedoring company operating in Cook County, Illinois. Kindra Marine had been hired by BAYOU to unload steel products from the BARGE while the BARGE was moored at BAYOU's facility on the Calumet River.
- At the time of the CASUALTY, CAMPBELL was working for Kindra Marine.  CAMPBELL may have been a "payroll" employee of another company ("IBC"), but, if so, he had been supplied to or "rented" to Kindra Marine.
- At the time of the CASUALTY, CAMPBELL was working under the supervision of Kindra Marine.
- At the time of the CASUALTY, CAMPBELL was engaged in unloading steel products from the BARGE.
- As a result of the CASUALTY and his injuries sustained

17

PA suggests that the NUFIC-LA policy, to which the NYMAGIC policy
follows form, does not define the term "employee" and therefore
does not limit the term "employee" to only direct employees.  It is
therefore reasonable, NUFIC-PA asserts, to interpret the term
"employee" in the NUFIC-LA policy as encompassing all employees,
both direct and leased or rented.  The Evanston Policy, to which
the NUFIC-PA policy follows form, defines "employee" to include a
"leased worker", which is defined as "a person leased to you by a
labor leasing firm under an agreement between you and the labor
leasing firm, to perform duties related to the conduct of your
business."  Cf. Gautreaux v. T.T.C. Illinois, Inc., 2007 WL 1300939
(La.App. 1 Cir. May 4, 2007)(holding a mere payroll provider is not
an employer and not vicariously liable).[10]  Thus, it is reasonable

---

therein, CAMPBELL made claim against either Kindra Marine
or IBC, or both, for workers compensation pursuant to the
LHWCA, and was paid workers' compensation benefits and/or
medical expenses under and pursuant to the LHWCA.

[10]The plaintiffs insist in their supplemental papers that
Gautreaux is distinguishable (because IBC was more than a mere
payroll provider in that IBC provided insurance for its employees,
issued paychecks, and calculated state and federal payroll taxes)
and, in any event, not binding in light of Morgan v. ABC
Manufacturer, 710 So.2d 1077 (La. 1998), in which the Louisiana
Supreme Court held that a general employer that is in the business
of hiring its employees out under the supervision of others remains
liable for the borrowed employee's torts.  But even considering
Morgan, which simply called for the application of enterprise
liability to be shared among a temporary service and its customer
that exercised contemporaneous control over an employee engaged in
tortious conduct, fails to advance the ball toward the ultimate
goal here; indeed, even assuming IBC is Campbell's general/lending
employer, it does not alter the fact that Campbell was indisputably
working for Bayou Steel's contractor, Kindra Marine, under Kindra

that the term "employee" in the NUFIC-LA policy, to which the
NYMAGIC policy follows form, also includes both leased and direct
employees.  Accordingly, because Campbell was an employee of Kindra
Marine, a Bayou Steel contractor, the exclusion upon which NYMAGIC
relies does not apply.[11]

---

Marine's supervision, and engaged in Kindra Marine's stevedoring
work at the time of the accident.

[11]For the subcontractor employee exclusion to apply, the
plaintiffs would have this Court disregard Campbell's clearly
established employment status vis-a-vis Kindra Marine,
notwithstanding the stipulated facts of record that Campbell was
employed by Kindra Marine and engaged in Kindra Marine's
stevedoring work at the time of the accident.  (It seems the
plaintiffs' argument is this: Even though Campbell was an employee
of Kindra Marine, which as a matter of law was a contractor and not
a sub-contractor of Bayou Steel, the Court must go on to still
consider whether IBC, another employer of Campbell, can be
considered a sub-contractor of Bayou Steel because it supplied
Campbell to Kindra.)  Ultimately, the plaintiffs fail to
convincingly reconcile the invoked exclusion's theoretical
application (an issue on which they bear the burden of proving)
with Campbell's dual employment status as a matter of law.
Accepting that Campbell was employed by both Kindra Marine and IBC,
if the Court also accepted for the sake of argument that IBC was
Kindra Marine's sub-contractor because it supplied employees to
Kindra, it would not alter the tautological result that the
supplied employees then became borrowed employees of Kindra, a
Bayou Steel contractor.  Obviously a result in which the issue
remains unresolved, because Campbell is both an employee of a Bayou
Steel contractor and a Bayou Steel subcontractor cannot be
tolerated so hairs must be split.
    How to reconcile these two these apparently conflicting
potential results of applying the exclusion to Campbell's dual
employment limbo?  Does the exclusion apply, or doesn't it?
Considering one of the Bayou Steel II panel's hypos, IBC did not
provide equipment and equipment operators, such as a crane and
crane operator, to Kindra to perform a portion of Kindra's
unloading work for Bayou Steel.  Instead, IBC supplied people that
were employed and supervised by Kindra in performing Kindra's work
for Bayou Steel.  Had Kindra hired IBC to perform some part of its
stevedoring work, as opposed to borrowing its employees to perform

Even if this Court determined that the term "employee", which is not defined in the NYMAGIC policy, is ambiguous and susceptible to more than one reasonable definition (opposing definitions being advanced by both sides), resort to the well-settled principles of insurance contract interpretation compel this Court to conclude that the NYMAGIC policy affords coverage for Campbell's injuries.[12]

---

its own work, perhaps the plaintiffs' argument might be more persuasive. But, remaining faithful to the facts submitted, applying the Bayou Steel II panel's crane operator hypo compels the conclusion that IBC, by simply supplying employees (that then became Kindra Marine stevedores), is not a sub-contractor as that term was defined by the Fifth Circuit. Bayou Steel is the paying party, and Kindra Marine is the performing party that is performing its work for Bayou Steel by using borrowed labor; the plaintiffs have not convinced the Court that IBC performed part of Kindra Marine's unloading work by supplying laborers.

[12]If an ambiguity remains after the Court applies the general rules of construction, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Henry, 957 So.2d at 1278 (citing Cadwallader, 848 So.2d at 580). Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. Id. (citing Louisiana Ins. Guar. Ass'n v. Interstate Fire & Casualty Co., 630 So.2d 759, 764 (La. 1994) and Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La. 1991)). For the rule of strict construction to apply, the ambiguous insurance policy provision must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. Id. (citing Cadwallader, 848 So.2d at 580). Of course, one ought not try to speculate how far the appellate court intended for Bayou Steel II's opinion to reach. All this Court can hope to do is be faithful to the mandate rule. Bayou Steel II's rather hazy view of the universe of the Pellucid leaves one hoping for more light than heat. The gratuitous insertion of hypos in the opinion seems only to have confused all sides in this case. Hopefully, this Court's decision will erase that confusion and offer a reasonable reconciliation of their contesting positions.

*B.*
*Exclusion for Claims Covered*
*by Standard Comprehensive General Liability Policy*

Because this Court has determined that the NYMAGIC policy affords coverage, it must address one final, independent basis advanced by NYMAGIC that its policy in fact does not cover Campbell's claims.   The plaintiffs contend that coverage for Campbell's injury was excluded under the NYMAGIC policy, based on the Fifth Circuit's determination that Campbell's claim was covered by Evanston's CGL policy.   This presents a new argument, or at least one that has not been raised since being mentioned during Round 1.   In this regard, it injects an issue outside the apparent parameters of the decision in <u>Bayou Steel II</u>.

The plaintiffs now resurrect their invocation of Endorsement #4 of NYMAGIC's policy, which states:

> Notwithstanding anything to the contrary, this policy shall exclude coverage for loss or damage which would be covered under the most current terms of the Standard Comprehensive General Liability Policy (Occurrence Basis) as promulgated by the Insurance Service Office.

The plaintiffs note with new emphasis that the Fifth Circuit and this Court have already held that the Evanston CGL policy covered the Campbell incident; a basis for these rulings included the inapplicability of the LHWCA exclusion (which was added by endorsement and therefore not part of the Standard CGL Policy) and the inapplicability of the watercraft exclusion and workers compensation exclusion found in the CGL Form of the Evanston

21

policy.  See Bayou Steel I.  The plaintiffs concede that the CGL Coverage form in the Evanston policy does not use the exact language as the ISO CGL Coverage From CG 00 01 10 01, but insists that on the same basis on which both the Fifth Circuit and this Court have previously found CGL coverage, coverage would also exist under the Standard ISO CGL Policy.  NUFIC-PA somewhat limitedly counters simply that the plaintiffs have not carried their burden on this issue.  Had the issue not been waived, the Court would have disagreed with NUFIC-PA on the merits.[13]

During oral argument, this Court raised the issue of whether the plaintiffs had waived their invocation of Endorsement #4. Technically, the plaintiffs mentioned this ground for non-coverage (and submitted the policy without argument) during the first round of cross-motions for summary judgment.  That is, on page 9 of their first motion for summary judgment in September 2008, the plaintiffs wrote:

---

[13]The CGL Coverage Form found in the Evanston policy is in substance at least the same as the Standard ISO CGL Coverage form that was in effect at the time the NYMAGIC policy went into effect and, therefore, under the exclusion of Endorsement #4, the NYMAGIC policy did not appear to cover the Campbell claim, which was covered by Evanston's CGL policy.  During oral argument on this, Round 3, of cross-motions for summary judgment was the first time that counsel gave flesh to what was before a skeletal, sporadic allusion to Endorsement #4, a seemingly covert provision that adds internal inconsistency to the policy in that it appears to take away with one fell swoop what the endorsement adding in certain bodily injury coverage (with the fiercely-litigated exception of injury to employees of the insured's subcontractors) provided.

Thus, the NYMAGIC policy was by its terms required to follow the form of the NUFICLA policy and therefore, coverage should have been excluded on the basis of the exception to the bodily injury endorsement.  Further, NYMAGIC's policy includes "Endorsement #4," which states,

Notwithstanding anything to the contrary, this policy shall exclude coverage for loss or damage which would be covered under the most current terms of the Standard Comprehensive General Liability Policy (Occurrence Basis) as promulgated by the Insurance Service Office.

See Exhibit "2."

Thus, under this endorsement, since Campbell's claim is covered by Evanston's CGL policy (as explained below), the NYMAGIC policy does not provide coverage for this event.

This same reference to Endorsement #4 was also submitted in the plaintiffs' appellate brief during the first round appeal (although not reached by either this Court or by the panel in <u>Bayou Steel I</u>).  Accordingly, it cannot be said that at no time during these lengthy proceedings did the plaintiffs invoke Endorsement #4.[14]   However, as NUFIC-PA points out in their supplemental papers, "[i]n the almost three years and over thirty pleadings, orders and opinions filed prior to the most recent cross motions for summary judgment, no more than four sentences have been devoted to Endorsement #4."  That is, the plaintiffs did not reference Endorsement #4 in their motion for a new trial filed November 5, 2008, did not mention it in their reply brief submitted to the

_____

[14]Perhaps had they developed the argument, and consistently asserted it, it would have been resolved by now.

23

Fifth Circuit during the first appeal, and, significantly, Endorsement #4 was never mentioned in any papers during Round 2 of this case whatsoever: following remand from the Fifth Circuit after the first appeal of this case and prior to the cross-motions now pending, Endorsement #4 was not mentioned even one time.

It is well-settled that the "[f]ailure to brief and argue an issue is grounds for finding the issue has been abandoned." Fehlhaber v. Fehlhaber, 681 F.2d 1015 (5th Cir. 1982), cert. denied, 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983). However, the Fifth Circuit has considered, in determining whether an issue has been preserved, such factors as whether purely legal issues are presented, and whether the opposing party would be prejudiced by responding. See id. ("An issue not properly preserved for appeal will generally not be considered unless the issue is a purely legal one and the asserted error is so obvious that the failure to consider it would result in a miscarriage of justice.")(citations omitted).

Although it is a close call, the Court is compelled to find that the plaintiffs abandoned their invocation of Endorsement #4 by failing to raise it at all before this Court during the second round of cross-motions, or on appeal to the Fifth Circuit leading up to Bayou Steel II. Cf. Hargrave v. Fireboard Corp., 710 F.2d 1154 (5th Cir. 1983)(finding that third-party plaintiff had abandoned its alternative theories of liability against third-party

24

defendant, where third-party plaintiff completely failed even to refer to its alternative theories of recovery during summary judgment motion practice in which the opposing third-party had urged dismissal of the third-party demand; third-party plaintiff had also failed to mention its alternative theories of recovery in pursuing a motion for reconsideration). Indeed, developing their argument concerning Endorsement #4 at that time would have been particularly appropriate, given that it may have obviated any analysis of the exclusion concerning injuries to employees of Bayou Steel's subcontractors, and given further that the Fifth Circuit had freshly determined that Campbell's claim was covered by Evanston's CGL policy (a policy which, as the plaintiffs had previously argued, focuses the applicability of Endorsement #4). The plaintiffs should not be allowed to "raise anew on remand an issue that it failed to pursue [on] appeal." See Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 327 (D.C.Cir. 1989).[15]

Accordingly, the plaintiffs' motion for summary judgment is

---

[15]As the District of Columbia Circuit Court of Appeals aptly noted:

> [T]he whole point of the rule regarding abandonment of claims is to require that all viable arguments be vigorously pursued throughout the proceedings, thereby allowing for earlier decision, rather than permitting parties to pick and choose which claims will be presented on appeal and which will be held back until a later time.

Id. at 327 n.9.

DENIED and NUFIC-PA's motion is GRANTED.


New Orleans, Louisiana, December 7, 2011

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE